UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.C.,

       Plaintiff,

    v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA, et al.,

       Defendants.

CIVIL ACTION NO.
1:20-CV-4445-JPB

## ORDER

This matter comes before the Court on the Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment filed by the Board of Regents of the University System of Georgia (the "Board of Regents"). This Court finds as follows:

### BACKGROUND

While J.C. was a student at Georgia College and State University ("GCSU"), she was sexually assaulted and subsequently harassed by another student. On October 30, 2020, J.C. filed this action against the Board of Regents, GCSU, Steve M. Dorman and Shawn Brooks (collectively, "Defendants"), bringing claims centered on the response to her sexual assault and the ensuing harassment. [Doc.

1].  Specifically, J.C. brought claims under Title IX, 42 U.S.C. § 1983 and Georgia law, and she sought compensatory damages, punitive damages and attorney's fees.

Defendants moved for summary judgment on November 17, 2021.  [Doc. 35].  While that motion was pending, Defendants filed a Notice of Supplemental Authority, arguing that Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1564 (2022), precluded J.C.'s Title IX claim.  [Doc. 56].  In Cummings, the Supreme Court of the United States held that emotional distress damages are not available under Spending Clause statutes.[1]  142 S. Ct. at 1576.  In the Notice of Supplemental Authority, Defendants contended that J.C. sought only emotional distress damages in her complaint and that consequently, Cummings mandated summary judgment in Defendants' favor on the Title IX claim.  [Doc. 56, p. 3].

On September 19, 2022, the Court granted summary judgment to Defendants on all of J.C.'s claims except for her Title IX claim.[2]  [Doc. 59].  The Court

---

[1] Although Cummings concerned a lawsuit under the Rehabilitation Act and the Patient Protection and Affordable Care Act, 142 S. Ct. at 1569, the parties do not dispute that its holding applies to Title IX.

[2] The Court concluded that J.C.'s Title IX claim had three components.  The Court granted summary judgment to the Board of Regents insofar as J.C. alleged a violation of Title IX in the appeals process.  However, the Court denied summary judgment to the extent that J.C. claimed a violation of Title IX as to the response to and investigation of her report of sexual assault and the failure to provide interim measures.  See [Doc. 59, pp. 34–35].

determined that the effect of <u>Cummings</u> on the Title IX claim was not properly before the Court and permitted Defendants to file an additional dispositive motion addressing that issue.  On October 11, 2022, the Board of Regents[3] filed the instant motion, seeking judgment on the pleadings or, alternatively, summary judgment. [Doc. 60].

## FACTS

The facts of this case are presented at length in the Court's September 19, 2022 order, <u>see</u> [Doc. 59, pp. 1–17], and those facts are incorporated by reference herein.  The Court further derives the facts of this case from the parties' prior filings, in addition to the Board of Regents' Statement of Material Facts [Doc. 60-2]; J.C.'s Response to the Board of Regents' Supplemental Statement of Material Facts [Doc. 61-1]; and the Affidavit of J.C. Regarding Damages [Doc. 61-2].  The Court also conducted its own review of the record.  In accordance with the Local Rules, this Court will not consider unsupported facts.  The Court will, however, use its discretion to consider all facts that the Court deems material after reviewing the record.  For the purpose of adjudicating the instant motion, the facts of this case are as follows:

J.C. was a student at GCSU during the academic year of 2017–2018 and

---

[3] J.C.'s claims against all other defendants were dismissed.

the spring of 2019.  [Doc. 59, p. 7].  J.C. planned to study nursing at GCSU.  [Doc. 61-1, p. 2].  In March 2018, J.C. was sexually assaulted by another student in and subsequently harassed by that student in the fall of 2018 and winter of 2019.  [Doc. 59, p. 8].  She completed the spring 2019 semester at GCSU, but she withdrew after that semester as a result of the events underlying this lawsuit.  Id. at 14–15; [Doc. 61-1, p. 1].  Although J.C. did not return to GCSU after that semester, she remained in her apartment in Milledgeville, Georgia, through the end of her lease in December 2019.  [Doc. 61-1, pp. 2–3].  J.C. had prepaid her rent, which was $525.00 per month.  [Doc. 61-2, p. 4].

J.C. stated that "[a]fter feeling unsupported and revictimized by the inaction by staff and other officials at [GCSU]," she "no longer felt that GCSU was a safe place for [her] to continue [her] studies."  Id. at 2.  As a result, J.C. "restart[ed] [her] path" to becoming a nurse at Herzing University, a private, online institution with tuition of $14,200.00.  Id.  J.C. asserts that if she had been able to continue her studies at GCSU, she would already have accrued two years of a salary as a Registered Nurse.[4]  Id. at 4.

---

[4] The Board of Regents asserts that J.C. did not qualify for admission to the nursing program at GCSU.  [Doc. 60-2, p. 3].  The record does not support this fact, and therefore the Court did not consider it in ruling on this motion.

According to J.C., she "forfeited all of the investments of time and money that went into attending school at GCSU." Id. at 2. Specifically, J.C. paid $4,275 in tuition to GCSU in July 2017 before taking out student loans in January 2018, August 2018 and February 2019 to continue to pay for her education. Id. Those loans were ultimately consolidated into a single loan totaling $17,000. Id. at 2 n.1. Additionally, J.C. received the HOPE Scholarship while she attended GCSU, which offset the cost of her tuition. Id. at 2. However, during her final semester, her Grade Point Average fell below the required threshold for the scholarship as a result of the events at issue in this case. Id. at 3.

Finally, J.C. stated that "[b]ecause of the totality of these events," she has received treatment from doctors and other professionals, including a doctor's visit for anxiety medication ($180), a psychiatry appointment ($602.69) and counseling visits ($540.00). Id. at 4. J.C. intends to continue attending counseling sessions, which cost $50 per session. Id.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law

which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d

642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue

before the court on a motion for summary judgment is 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at

646 (quoting Anderson, 477 U.S. at 251).

The party moving for summary judgment bears the initial burden of showing

that no genuine issue exists as to any material fact, "and in deciding whether the

movant has met this burden the court must view the movant's evidence and all

factual inferences arising from it in the light most favorable to the nonmoving

party." Id.  After the movant satisfies this initial burden, the nonmovant bears the

burden of showing specific facts indicating that summary judgment is improper

because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." Walker v.

Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251).

If the record taken as a whole cannot lead "a rational trier of fact to find for the

non-moving party, there is 'no genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288 (1968)).

## ANALYSIS

### A.     The Supreme Court's Holding in <u>Cummings</u>

In <u>Cummings v. Premier Rehab Keller, P.L.L.C.</u>, the Supreme Court held that emotional distress damages are not recoverable under Spending Clause legislation.  142 S. Ct. 1564, 1576 (2022).  In that case, the plaintiff requested that the defendant provide an American Sign Language interpreter for her physical therapy appointments, which the defendant declined to do.  <u>Id.</u> at 1569.  The plaintiff subsequently sued the defendant for disability discrimination under the Rehabilitation Act and the Patient Protection and Affordable Care Act.  <u>Id.</u>  The district court dismissed the plaintiff's complaint, finding that "the only compensable injuries that Cummings alleged Premier caused were 'humiliation, frustration, and emotional distress'" and that "'damages for emotional harm' [were] not recoverable in private actions brought to enforce the Rehabilitation Act or the Affordable Care Act."  <u>Id.</u> (quoting <u>Cummings v. Premier Rehab, P.L.L.C.</u>, No. 4:18-CV-649, 2019 WL 227411, at *4 (N.D. Tex. Jan. 16, 2019)).  The Fifth Circuit Court of Appeals affirmed.  <u>Id.</u>

The Supreme Court agreed and held that emotional distress damages are unavailable in private causes of action to enforce Spending Clause statutes. The Court explained that "[a] particular remedy is . . . 'appropriate relief' in a private Spending Clause action 'only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature.'" Id. at 1570 (quoting Barnes v. Gorman, 536 U.S. 181, 187 (2002)). Relying on a contract-law analogy, the Court determined that federal funding recipients are on notice of those remedies traditionally available in breach-of-contract actions, i.e., compensatory damages and injunctions. Id. at 1571. And "[i]t is hornbook law that 'emotional distress is generally not compensable in contract.'" Id. (quoting D. Laycock & R. Hasen, Modern American Remedies 216 (5th ed. 2019)). Accordingly, the Supreme Court "[could not] treat federal funding recipients as having consented to be subject to damages for emotional distress" and held that such damages are unavailable under the Spending Clause statutes at issue. Id. at 1572.

## B.   Applying Cummings

The question before the Court is, in light of Cummings, whether the Board of Regents is entitled to summary judgment[5] on J.C.'s Title IX claim. Stated

---

[5] The Board of Regents moved for judgment on the pleadings in the alternative. The Court treats the instant motion as one for summary judgment because, in the Court's view, J.C.'s complaint passes muster under the standard of review on a motion for

another way, the Court must determine whether the damages sought by J.C. are permissible under <u>Cummings</u> such that her Title IX claim may proceed.

As a threshold matter, the Supreme Court has held that a Title IX plaintiff may seek and recover compensatory damages. <u>Franklin v. Gwinnett Cnty. Pub. Sch.</u>, 503 U.S. 60, 76 (1992). In this case, J.C. seeks three general categories of damages: educational expenses and lost earnings; rent; and expenses for doctor's visits and counseling sessions. <u>See</u> [Doc. 61-2]. The Board of Regents contends that J.C.'s damages are effectively the result of her emotional harm or are "simply the quantifiable aspects of [her] specified emotional injuries." [Doc. 60-1, p. 3]. Essentially, the Board of Regents asserts that because J.C.'s damages arise from or are related to emotional distress, <u>Cummings</u> precludes her Title IX claim. J.C. argues that her damages are compensatory in nature and are not barred by <u>Cummings</u>. The Court will address below each category of damages at issue.

---

judgment on the pleadings. <u>Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (noting that the relevant question for examining a complaint under Rule 12(c) is "whether the [complaint] state[s] a claim for relief"). In the complaint, J.C. alleges that as a result of the events in this case, she was "effectively barred from educational opportunities or benefits"—in other words, a non-emotional injury. [Doc. 1, p. 21]. Moreover, she does not seek damages for emotional distress, but she does expressly request compensatory damages. <u>Id.</u> at 25. Consequently, the Court concludes that judgment on the pleadings in favor of the Board of Regents is not warranted.

J.C. first seeks educational expenses (namely, tuition) and lost earnings.  As

relevant to these particular damages, J.C. alleges that her injuries in this case

include having to place her education on hold and losing educational opportunities

and benefits at GCSU.  See [Doc. 1, pp. 21–22]; see also 20 U.S.C. § 1681(a) ("No

person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance . . . .").  As

a result of these harms, J.C. forfeited investments in her education at GCSU and

incurred tuition expenses at a new institution.  The delay in her education,

according to J.C., also resulted in lost wages.  These damages arise from J.C.'s

claimed injuries—the denial of educational opportunities and the subsequent delay

in her education—and they thus fall within the realm of "compensatory damages"

that are available under Title IX.  Davis Next Friend LaShonda D. v. Monroe Cnty.

Bd. of Educ., 526 U.S. 629, 650 (1999) ("[Title IX] makes clear that, whatever else

it prohibits, students must not be denied access to educational benefits and

opportunities on the basis of gender."); McMillian v. FDIC, 81 F.3d 1041, 1055

(11th Cir. 1996) (defining "compensatory damages" as "those damages that 'will

compensate the injured party for the injury sustained, and nothing more; such as

will simply make good or replace the loss caused by the wrong or injury'" (quoting

Black's Law Dictionary (6th ed. 1991))).  Moreover, courts have found that

damages such as those sought by J.C. are recoverable under Title IX or other

Spending Clause statutes.  E.g., Doe v. Town of North Andover, No. 1:20-CV-

10310, 2023 WL 3481494, at *12 (D. Mass. May 16, 2023) (holding that

Cummings did not bar the plaintiff's Title IX claims where she sought relief other

than emotional distress damages, including damages for tuition and school

expenses); see also Alexander v. Thomas Univ., Inc., No. 7:21-CV-86, 2023 WL

2307612, at *6 (M.D. Ga. Mar. 1, 2023) (finding that a plaintiff bringing a

Rehabilitation Act claim would be "entitled to recover monetary damages,

including lost tuition").  The Court thus concludes that Cummings does not bar

J.C.'s damages for educational expenses and lost earnings, and to the extent that

the Board of Regents seeks summary judgment on this ground, the motion is

**DENIED**.

Next, J.C. seeks to recover for the rent that she prepaid in 2019 for her

apartment in Milledgeville, Georgia.  As with J.C.'s claims for educational

expenses and lost earnings, any damages for prepaid rent take the form of

compensation for an economic loss incurred as a result of J.C.'s claimed injury:

the denial of educational benefits.  Stated simply, J.C. relied on the continued

availability of her GCSU education when prepaying her rent through 2019.

E.g., A.T. v. Oley Valley Sch. Dist., No. 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (permitting the plaintiff's claims for "any . . . non-emotional distress compensatory damages" to proceed, including for "lost income, lost opportunity, fringe benefits, attorney fees, [and] costs").  Consequently, Cummings does not preclude J.C.'s claim for prepaid rent, and the Board of Regents' motion for summary judgment is **DENIED** on this basis.

Finally, J.C. requests damages related to counseling and psychiatric treatment.  In the Court's view, these damages pose a different question than those for educational expenses, lost earnings or prepaid rent.  Instead of arising from the claimed injury of the denial of educational benefits or opportunities, damages for counseling and psychiatric treatment relate directly to the emotional harms suffered by J.C.—in other words, to her emotional distress.  Several courts have found that medical expenses for psychological or mental harms are, in sum and substance, emotional distress damages.  See Doe v. Fairfax Cnty. Sch. Bd., No. 1:18-cv-00614, 2023 WL 424265, at *6 (E.D. Va. Jan. 25, 2023) (excluding evidence of "expenses for counseling and medical treatment for stomach-related issues" as "proxies for impermissible emotional distress damages"); Oley Valley Sch. Dist., 2023 WL 1453143, at *4 (granting summary judgment to the defendant on the plaintiff's claims "for past, present and future medical expenses based on

emotional distress such as bipolar disorder, anxiety, humiliation, embarrassment, frustration and alcohol and drug addiction and past, present and future emotional pain and suffering/mental distress"); K.G. v. Woodford Cnty. Bd. of Educ., No. 5:18-555, 2022 WL 17993127, at *3 (E.D. Ky. Dec. 29, 2022) ("[C]ompensatory damages are inappropriate in this case because the only injuries that the plaintiffs have arguably alleged, if at all, are emotional in nature."), appeal dismissed sub nom. K.G. ex rel. Doe v. Woodford Cnty., Ky. Bd. of Educ., No. 23-5083, 2023 WL 3198809 (6th Cir. Mar. 30, 2023); see also, e.g., M.R. v. Burlington Area Sch. Dist., No. 21-CV-1284, 2023 WL 4826471, at *5 (E.D. Wis. July 27, 2023) (in a Title VII case, deciding to "join the greater number of courts that have concluded that the mental health treatment costs sought to be recovered are mere proxies for emotional distress damages and therefore unrecoverable").

Additionally, some courts have distinguished between medical expenses for physical injuries and expenses related to emotional or psychological harms, finding that the latter are merely emotional distress damages under another name. Doe ex rel. Doe v. City of Pawtucket, 633 F. Supp. 3d 583, 591 (D.R.I. 2022) (finding that medical expenses for physical injuries were permissible under Cummings but concluding that "[t]he non-medical expense, non-emotional distress damages requested in the complaint—psychological damage, post traumatic syndrome, and

loss of enjoyment—resemble[d] varying forms or descriptions of emotional distress"); Pennington v. Flora Cmty. Unit Sch. Dist. No. 35, No. 3:20-CV-11, 2023 WL 348320, at *4 (S.D. Ill. Jan. 20, 2023) (allowing medical expenses for physical injuries and suicidal ideations but rejecting the plaintiffs' "attempt to rebrand their request for damages for 'mental, emotional, psychological injuries' and 'pain and suffering' as something other emotional damages").

While not binding on the Court, these cases provide a persuasive indication that expenses for counseling and psychiatric treatment are not recoverable under Title IX post-Cummings. Accordingly, insofar as J.C. seeks compensatory damages for these expenses, the Court finds that such damages would redress emotional injuries and are therefore unavailable in a Title IX action. Insofar as the Board of Regents seeks summary judgment on the availability of J.C.'s damages for counseling and psychiatric treatment, the motion is **GRANTED**.

## CONCLUSION

For the reasons set forth above, the Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment [Doc. 60] is **GRANTED IN PART AND DENIED IN PART**.

Because the dispositive motions have been decided and discovery is closed, the Court **ORDERS** the case to mediation. The parties may retain a private

mediator at their own expense or ask this Court to appoint a United States Magistrate Judge to conduct the mediation. The parties are not required to pay for mediation by a Magistrate Judge. No later than August 8, 2023, the parties must advise the Court of their mediation preference. The parties shall have through and including October 9, 2023, to complete the mediation.

In light of the upcoming mediation, the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case for docket management purposes. Administrative closure will not prejudice the rights of the parties to this litigation in any manner nor preclude the filing of documents. Within five days after the mediation, the parties shall notify the Court as to whether mediation was successful.

**SO ORDERED** this 1st day of August, 2023.

J. P. BOULEE
United States District Judge